**Fill in this information to identify the case:**

Debtor 1  Thomas Dalton
Debtor 2  Dawn Dalton
(Spouse, if filing)
United States Bankruptcy Court  Northern District of Illinois
Case number: 18-26013

FILED
U.S. Bankruptcy Court
Northern District of Illinois
9/28/2018

EXHIBIT A

## Official Form 410
## Proof of Claim                                                                                                 /16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

### Part 1: Identify the Claim

**1. Who is the current creditor?**
The Seasons at Southbury Townhome Association
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**
☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?
The Seasons at Southbury Townhome Association

Name
Keay & Costello, P.C.
128 S. County Farm Road
Wheaton, IL 60187

Contact phone  630-690-6446
Contact email  ben@keaycostello.com

Where should payments to the creditor be sent? (if different)

Name _____

Contact phone _____
Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one): _____

**4. Does this claim amend one already filed?**
☑ No
☐ Yes. Claim number on court claims registry (if known) _____   Filed on _____ MM/DD/YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**
☑ No
☐ Yes. Who made the earlier filing? _____

Official Form 410                          Proof of Claim                                         page 1

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

| | |
|---|---|
| 6. Do you have any number you use to identify the debtor? | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |
| 7. How much is the claim? | $ 3265.14    Does this amount include interest or other charges?<br>☐ No<br>☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
| 8. What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>Association common expense |
| 9. Is all or part of the claim secured? | ☐ No<br>☑ Yes. The claim is secured by a lien on property.<br>**Nature of property:**<br>☑ Real estate.    If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:**    Association Lien<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**    $ 172000.00<br>**Amount of the claim that is secured:**    $ 3265.14<br>**Amount of the claim that is unsecured:**    $ 0.00    (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:**    $ _____<br><br>**Annual Interest Rate (when case was filed)**    ____ %<br>☑ Fixed<br>☐ Variable |
| 10. Is this claim based on a lease? | ☑ No<br>☐ Yes. Amount necessary to cure any default as of the date of the petition. $ _____ |
| 11. Is this claim subject to a right of setoff? | ☑ No<br>☐ Yes. Identify the property: _____ |

Official Form 410                               Proof of Claim                                page 2

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. *Check all that apply*: | Amount entitled to priority |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies | $ _____ |
| | * Amounts are subject to adjustment on 4/1/19 and every 3 years after that for cases begun on or after the date of adjustment. | |

### Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
18 U.S.C. §§ 152, 157 and 3571.

Check the appropriate box:

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   9/28/2018
                   MM / DD / YYYY

/s/ Benjamin J. Rooney
_____
Signature

Print the name of the person who is completing and signing this claim:

Name        Benjamin J. Rooney
            First name   Middle name   Last name

Title       _____

Company     Keay & Costello, P.C.
            Identify the corporate servicer as the company if the authorized agent is a servicer

Address     128 S. County Farm Road
            Number   Street
            Wheaton, IL 60187
            City   State   ZIP Code

Contact phone   630-690-6446        Email   ben@keaycostello.com

Official Form 410                   Proof of Claim                        page 3

DATE: 9/19/18 TIME: 10:17 AM                    THE SEASONS AT SOUTHBURY                                    Page: 2

FINANCIAL TRANSACTIONS - 09/19/18

122 Lakeshore Drive
Thomas Dalton
Unit ID: 65010
STATUS: 50 - Attorney Action
PREPAID BAL:    0.00

| DATE | PAYMT AMT | CHECK # | DEP DT | CODE | N/A | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|---|---|---|---|---|
| 071818 | | APPLY LATE FEE | | 01 | | Late Fees | 25.00 | 3435.14 |
| 080118 | | APPLY CHARGES | | A1 | | ASSESSMENT | 165.00 | 3600.14 |
| 081418 | 500.00 | 1 | 081418 | A1 | | ASSESSMENT | (500.00) | 3100.14 |
| 081418 | 300.00 | 17757 | 081418 | A1 | | ASSESSMENT | (300.00) | 2800.14 |
| 090118 | | APPLY CHARGES | | A1 | | ASSESSMENT | 165.00 | 2965.14 |
| 9-20-18 | | BK Legal fee | | | | | 300.00 | 3,265.14 |

DATE: 9/19/18 TIME: 10:17 AM         THE SEASONS AT SOUTHBURY                    Page: 1

FINANCIAL TRANSACTIONS - 09/19/18

122 Lakeshore Drive
Thomas Dalton
Unit ID: 65010
STATUS: 50 - Attorney Action
PREPAID BAL:    0.00

| DATE | PAYMT AMT | CHECK # DEP DT | CODE | N/A | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|---|---|---|---|
| 080117 | | APPLY CHARGES | A1 | | ASSESSMENT | 165.00 | 165.00 |
| 081817 | | APPLY LATE FEE | 01 | | Late Fees | 25.00 | 190.00 |
| 090117 | | APPLY CHARGES | A1 | | ASSESSMENT | 165.00 | 355.00 |
| 091917 | | APPLY LATE FEE | 01 | | Late Fees | 25.00 | 380.00 |
| 100117 | | APPLY CHARGES | A1 | | ASSESSMENT | 165.00 | 545.00 |
| 101817 | | APPLY LATE FEE | 01 | | Late Fees | 25.00 | 570.00 |
| 110117 | | APPLY CHARGES | A1 | | ASSESSMENT | 165.00 | 735.00 |
| 112017 | | APPLY LATE FEE | 01 | | Late Fees | 25.00 | 760.00 |
| 120117 | | APPLY CHARGES | A1 | | ASSESSMENT | 165.00 | 925.00 |
| 122017 | | APPLY LATE FEE | 01 | | Late Fees | 25.00 | 950.00 |
| 010118 | | APPLY CHARGES | A1 | | ASSESSMENT | 165.00 | 1115.00 |
| 011918 | | APPLY LATE FEE | 01 | | Late Fees | 25.00 | 1140.00 |
| 020118 | | APPLY CHARGES | A1 | | ASSESSMENT | 165.00 | 1305.00 |
| 021918 | | APPLY LATE FEE | 01 | | Late Fees | 25.00 | 1330.00 |
| 030118 | | APPLY CHARGES | A1 | | ASSESSMENT | 165.00 | 1495.00 |
| 032018 | | APPLY LATE FEE | 01 | | Late Fees | 25.00 | 1520.00 |
| 032618 | | EXPENSE ADJ | 05 | | Attorney Fees | 25.00 | 1545.00 |
| 040118 | | APPLY CHARGES | A1 | | ASSESSMENT | 165.00 | 1710.00 |
| 041818 | | APPLY LATE FEE | 01 | | Late Fees | 25.00 | 1735.00 |
| 050118 | | APPLY CHARGES | A1 | | ASSESSMENT | 165.00 | 1900.00 |
| 050718 | | EXPENSE ADJ | 05 | | Attorney Fees | 280.89 | 2180.89 |
| 052118 | | APPLY LATE FEE | 01 | | Late Fees | 25.00 | 2205.89 |
| 060118 | | APPLY CHARGES | A1 | | ASSESSMENT | 165.00 | 2370.89 |
| 061218 | | EXPENSE ADJ | 05 | | Attorney Fees | 549.25 | 2920.14 |
| 062018 | | APPLY LATE FEE | 01 | | Late Fees | 25.00 | 2945.14 |
| 070118 | | APPLY CHARGES | A1 | | ASSESSMENT | 165.00 | 3110.14 |
| 071018 | | EXPENSE ADJ | 05 | | Attorney Fees | 300.00 | 3410.14 |

```
200700016778
Filed for Record in
KENDALL COUNTY, ILLINOIS
PAUL ANDERSON
05-25-2007 At 10:55 am.
COVENANTS            77.00
RHSP Surcharge       10.00
```

# THE SEASONS AT SOUTHBURY TOWNHOME ASSOCIATION

# DECLARATION

# OF

# COVENANTS, CONDITIONS, RESTRICTIONS AND EASEMENTS

This Instrument Was Prepared By: Return To:

*Knuckles, Keough & Moody, PC*
*1001 E. Chicago Avenue, Suite 103*
*Naperville, IL 60540*
*(630)369-2700*

Common Area, or any Structure, equipment, facilities or fixtures affecting or serving any Dwelling Unit or the Common Area. Prior notice to the Owner shall be made in writing by the Board or its management agent.

Section 5.05. <u>Owner Requested Maintenance</u>. If the Association proposes to furnish maintenance with respect to a Dwelling Unit at the request of its Owner, other than as required by this Declaration, the Association shall require such Owner to pay the full cost thereof.

Section 5.06. <u>Association Easement</u>. The Association, its successors, assigns, agents and employees, is hereby granted the right and easement to enter in and upon any the exterior of the Dwelling Unit thereon at any reasonable time to perform any maintenance, repair or replacement contemplated in this Declaration.

Section 5.07. <u>Entry Signs</u>. The Association shall provide for the care, maintenance, replacement, and reconstruction of entry signs constructed by Declarant identifying the Association or Common Areas improvement and the landscaping around such signs, whether located on Common Area, or, if approved by the Village, within the public right-of-way. All costs incurred as a consequence thereof shall be a Common Expense. A non-exclusive easement for such purpose is hereby established for the benefit of the Association upon that portion of the Common Area upon which such a sign is constructed by Declarant.

## ARTICLE VI
## ASSESSMENTS

Section 6.01. <u>Creation of Assessments</u>. There are hereby created assessments for Association expenses as may from time to time specifically be authorized by the Board to be commenced at the time and in the manner set forth in Section 6.06 of this Article. There shall be three (3) types of assessments:

(a) Assessments to fund Common Expenses for the benefit of all Members, including any payments required to be made to the Master Association;

(b) Special Assessments as described in Section 6.03 below; and

(c) Assessments as provided for in Section 5.02. including fines for rules violations whether payable to this, or the Master Association.

Assessments shall be levied equally on all Units as provided in Section 6.02 below. Special Assessments shall be levied as provided in Section 6.03 below. Each Owner, by acceptance of a deed or recorded contract of sale to any Unit, is deemed to covenant and agree to pay these assessments.

All assessments, and all other amounts due to the Association by an Owner, together with

8

reasonable late charges, in amounts to be established in advance by the Board in the Rules and Regulations, and reasonable attorney's fees, shall be a continuing lien upon the Unit until paid. All such amounts, together with late charges, costs, and reasonable attorney's fees, shall also be the personal obligation of the Person who was the Owner of such Unit at the time the obligation arose, and if title to such Unit is held in trust, then each beneficiary thereof shall also be jointly and severally liable therefor. Upon transfer of title to a Unit, the grantee, by acceptance of the deed to such Unit, is deemed to assume such personal obligation for past due assessments, including late charges, costs and attorney's fees, and shall be jointly and severally liable with the grantor for such portion thereof as may be due and payable at the time of conveyance, except no first Mortgagee who obtains title to a Unit pursuant to the remedies provided in the Mortgage shall be liable for unpaid assessments which accrued prior to such acquisition of title.

The Association shall, upon demand at any time, furnish to any Owner liable for any type of assessment a certificate in writing signed by an officer or the Managing Agent of the Association setting forth whether such assessment and other amounts have been paid as to any particular Unit. Such certificate shall be conclusive evidence of payment to the Association of such assessment and other amounts therein stated to have been paid. The Association may require the advance payment of a processing fee, the amount of which shall be approved by the Board. The Association may delegate this obligation and assign the right to receive said fee to its Managing Agent.

Assessments shall be paid monthly on the first day of each month, or in such manner and on such dates as may otherwise be fixed by the Board. Each Owner, by acceptance of a deed to his or her Unit, acknowledges that all Assessments levied hereunder are annual assessments due and payable in advance on the first day of the fiscal year; provided, the Board may permit any assessment to be paid in installments. Unless the Board otherwise provides, Assessments may be paid in monthly installments.

No Owner may waive or otherwise exempt himself from liability for the assessments provided for herein, including, by way of illustration and not limitation, by non-use of the Common Area or abandonment of the Unit. The obligation to pay assessments is a separate and independent covenant on the part of each Owner. No diminution or abatement of assessment or set-off shall be claimed or allowed by reason of any alleged failure of the Association or Board to take some action or perform some function required to be taken or performed by the Association or Board under this Declaration or the Bylaws, or for inconvenience or discomfort arising from the making of repairs or improvements which are the responsibility of the Association, or from any action taken to comply with any law, ordinance, or with any order of directive of any municipal or other governmental authority.

Section 6.02. **Computation of Assessment.** It shall be the duty of the Board, at least sixty (60) days before the beginning of each fiscal year, to prepare a budget covering the estimated Common Expenses of the Association during the coming year. The budget shall include a capital contribution establishing a reserve fund in accordance with a capital budget separately prepared. The requirement to include a reserve fund or a reserve component of the budget shall not apply to the

9

developer-controlled Board. Rather, this obligation begins once the first Dwelling Unit Owner-controlled Board is elected.

The Assessment to be levied for the coming year against each Unit subject to assessment under Section 6.06 below shall be computed by dividing the budgeted Common Expenses by the total number of Units submitted to the Declaration. The Board shall cause a copy of the Common Expense budget and notice of the amount of Assessment to be levied against each Unit for the following year to be mailed to each Owner at least thirty (30) days prior to the beginning of the fiscal year, and no less than ten (10) and no more than thirty (30) days prior to any Board meeting concerning the adoption of the proposed annual budget or any increase or establishment of an assessment. Such budget and assessment shall become effective unless Members having at least twenty percent (20%) of the votes of the Association petition the Board to call a meeting of the Members within fourteen (14) days of the Board action. The Board, upon receiving such a petition in a timely manner, shall call a meeting of the Members within thirty (30) days of the date of delivery of the petition to consider the budget or separate assessment. The Members shall have no right of disapproval of any budget and assessment which represents less than a fifteen (15%) percent increase over the previous year's budget and assessment.

Notwithstanding the foregoing, however, in the event the proposed budget is disapproved or the Board fails for any reason so to determine the budget for any year, then and until such time as a budget shall have been determined as provided herein, the budget in effect for the immediately preceding year shall continue for the current year.

Section 6.03. Special Assessments. In addition to the assessments authorized in Section 6.02 of this Article, the Association may levy a Special Assessment for nonrecurring expenses, improvements, shortfalls, maintenance or repairs to the Common Area to be computed in the same way as assessments in 6.02. The Board shall cause a notice of the amount of such Special Assessment to be levied against each Unit to be mailed to each Owner no less than ten (10) and no more than thirty (30) days prior to any Board meeting concerning the adoption of the proposed Special Assessment. The Board, upon written petition by Owners with twenty percent (20%) of the votes of the Association delivered to the Board within fourteen (14) days of the Board action, shall call a meeting of the Owners within thirty (30) days of the date of delivery of the petition to consider the Special Assessment. Unless a majority of the total votes of the Owners are cast at the meeting to reject the Special Assessment, it is ratified. Special Assessments shall be payable in such manner and at such times as determined by the Board, and may be payable in installments extending beyond the fiscal year in which the Special Assessment is approved, if the Board so determines.

Section 6.04. Lien for Assessments. Upon recording of a notice of lien on any Unit, there shall exist a perfected lien for unpaid assessments prior and superior to all other liens, except (1) all taxes, bonds, assessments, and other levies which by law would be superior thereto, and (2) the lien or charge of any first Mortgage of record (meaning any recorded Mortgage with the first priority over other Mortgages) made in good faith and for value. Such lien may be enforced by suit, judgment, and foreclosure.

The Association, acting on behalf of the Owners, shall have the power to bid for the Unit at foreclosure sale and to acquire and hold, lease, mortgage, and convey the same. During the period in which a Unit is owned by the Association following foreclosure: (a) No right to vote shall be exercised on its behalf; and (b) no assessment shall be assessed or levied on it. Suit to recover a money judgment for unpaid Common Expenses and attorney's fees shall be maintainable without foreclosing or waiving the lien securing the same.

Section 6.05. Date of Commencement of Assessments. The assessments provided for herein shall commence as to each Unit on the first day of the month following transfer of title to the Unit by Declarant. The first annual assessment shall be adjusted according to the number of days remaining in the fiscal year at the time assessments commence on the Unit.

Section 6.06. Subordination of the Lien to First Mortgages. The lien of assessments, including interest, late charges (subject to the limitations of Illinois law), and costs (including attorney's fees) provided for herein, shall be subordinate to the lien of any first Mortgage upon any Unit. The sale or transfer of any Unit shall not affect the assessment lien. However, the sale or transfer of any Unit pursuant to judicial or non-judicial foreclosure of a first Mortgage shall extinguish the lien of such assessments as to payments which became due prior to such sale or transfer. No sale or transfer shall relieve such Unit from lien rights for any assessments thereafter becoming due. Where the Mortgagee holding a first Mortgage of record or other purchaser of a Unit obtains title pursuant to remedies under the Mortgage, its successors and assigns shall not be liable for the share of the Common Expenses or assessments by the Association chargeable to such Unit which became due prior to the acquisition of title to such Unit by such acquirer.

Section 6.07. Capitalization of Association. Upon acquisition of record title to a Unit by the first purchaser thereof other than the Declarant or an Owner who purchases solely for the purpose of constructing a dwelling thereon for resale, a contribution shall be made by or on behalf of the purchaser to the working capital of the Association in an amount equal to 3 months' assessments. Such contribution shall not be considered an advance payment of assessments and shall be in addition to, not in lieu of, assessments then or thereafter coming due. This amount shall be deposited into an account of the Association as a start-up fund and for use in covering operating expenses and other expenses incurred by the Association pursuant to the terms of this Declaration. The funds so contributed shall not be transferable to any subsequent Owner or otherwise, and the Association shall have no obligation to pay interest to any Owner or other person in relation thereto.

## ARTICLE VII
## INSURANCE/CONDEMNATION

Section 7.01. Casualty Insurance: The Board shall have the authority to and shall obtain insurance for the Premises and all improvements thereto against loss or damage by fire and such other hazards as may be required under applicable requirements of the Federal National Mortgage Association from time to time, as the Board may deem desirable, or as reasonably required

11